[Crim. No. 13865.   Second Dist., Div. Two.   Sept. 17, 1968.]

THE PEOPLE, Plaintiff and Respondent, v. BENNIE
ERVIN SMITH, Defendant and Appellant.

Glory D. Coffey, under appointment by the Court of Appeal, for Defendant and Appellant.

Thomas C. Lynch, Attorney General, Elizabeth Miller and Gary J. Freedman, Deputy Attorneys General, for Plaintiff and Respondent.

NUTTER, J. pro tem.*—Appellant herein was convicted of two counts of second degree burglary of two stores. He was committed to the Department of Corrections under section 3051 of the Welfare and Institutions Code. A petition for writ of habeas corpus was denied; criminal proceedings were reinstated and he was sentenced to state prison for the term prescribed by law.

Appellant's contentions on appeal are confined to errors of law allegedly committed by the trial judge.     Appellant contends that it was erroneous for the court to consider prior convictions in the absence of proof that appellant was represented by counsel at the time of the prior convictions or that he intelligently waived his right of counsel at that time.

Appellant did not testify. Appellant further contends that the trial court erroneously denied his request for a jury instruction cautioning the jury that he need not testify

---

*Assigned by the Chairman of the Judicial Council,

and could rely upon the state of the evidence. ▉ Finally appellant contends, and the Attorney General apparently agrees, that he was erroneously denied his right to be represented by counsel at the time of sentence.

### THE PRIOR CONVICTIONS

▉ Appellant was charged with a prior conviction of a burglary in the State of Texas wherein he served a prison term and a prior conviction of grand theft in the State of California where he served a prison term. Originally he pleaded not guilty and denied the prior convictions but later admitted the two priors. Appellant argues:

"It would appear the record is devoid of any proof by the People or any attempt at proof by the People that appellant was represented by counsel at the prior convictions or had intelligently waived his right to such counsel. The appellant admitted that he had been charged with prior felonies and had been convicted and served a term of imprisonment therefor, however, *there was no inquiry as to whether defendant was represented by counsel.*" (Italics added.)

Of course, the function of an appellate court in reviewing a trial court judgment on direct appeal is limited to a consideration of matters contained in the record of the trial proceedings. Appellant herein by a statement in his brief is asking the court to accept as true the unsupported statement that appellant was unrepresented by counsel at his prior convictions or that he had not intelligently waived his right to counsel. On this record it would be improper for us to consider the matter attempted to be raised. (See *People* v. *Merriam,* 66 Cal.2d 390, 397 [58 Cal.Rptr. 1, 426 P.2d 161].)

The unsworn statement of his counsel that the record is devoid of any proof is not sufficient to raise this issue and bring this case within the rule in the cases of *In re Woods,* 64 Cal.2d 3 [48 Cal.Rptr. 689, 409 P.2d 913], *In re Luce,* 64 Cal.2d 11 [48 Cal.Rptr. 694, 409 P.2d 918], and *In re Tucker,* 64 Cal.2d 15 [48 Cal.Rptr. 697, 409 P.2d 921]. One seeking to challenge the validity of prior convictions may do so only through a properly supported allegation that at the proceedings leading to his prior conviction, he was neither represented by counsel nor waived his right to be so represented. (*People* v. *Merriam, supra.*)

### THE COURT'S REFUSAL OF THE DEFENDANT'S REQUESTED INSTRUCTIONS

▉ The circumstances of the court's denial of appel-

lant's request for a jury instruction that he need not testify and could rely upon the state of the evidence is best demonstrated by the transcript.

"MR. WEBB: The People rest. THE COURT: Proceed with the defense. MR. SALTER: The defense rests, your Honor. THE COURT: Proceed, Mr. Webb. (Counsel argue cases to the jury) THE COURT: Ladies and Gentlemen of the Jury: It now becomes my duty—— MR. SALTER: (Int'g) Before the Court gives the Instructions, may I approach the bench on an additional instruction? THE COURT: Yes. (The following proceedings were had at the bench and out of the hearing of the jury) MR. SALTER: At the time the Instructions were given, I did not realize the defendant would not testify. There is an Instruction in CALJIC where the defendant does not testify. If I may have a moment to look that up and submit it to the Court. THE COURT: I think your request is premature—it is out of time. I started to give the Instructions and your request is not proper. I am sorry. MR. WEBB: It isn't timely. THE COURT: It isn't timely and this request is made, I want this record to show, after I had started to instruct the jury. If you have any Instructions to give, they should be presented before the arguments, not during the Instructions. MR. SALTER: May the record show that it is now five to 12:00, and it was my belief, possibly mistaken, that the Court would recess at noontime and instruct after lunch. Of course, the Court made no indication it would do so—— THE COURT: (Int'g) I didn't make any indication. MR. SALTER: I just said that in the record. Also, your Honor, I did not know, until it came time for the defense, that the defendant would not testify. That is why I did not give that Instruction. THE COURT: That was the time you should have made the request, not during the instructions. MR. SALTER: Whether I was late, which I doubt—which I deny being late—the [sic] is no reason the [sic] prejudice the defendant in this matter. This is a Court of Law—— THE COURT: (Int'g) Thank you for your suggestions, but the objection is sustained—the motion is denied.''

Section 1093.5 of the Penal Code provides: "In any criminal case which is being tried before the court with a jury, all requests for instructions on points of law must be made to the court and all proposed instructions must be delivered to the court before commencement of argument. Before the commencement of the argument, the court, on request of counsel, must: (1) decide whether to give, refuse, or modify the proposed instructions; (2) decide which instructions shall be

given in addition to those proposed, if any; and (3) advise counsel of all instructions to be given. However, if, during the argument, issues are raised which have not been covered by instructions given or refused, the court may, on request of counsel, give additional instructions on the subject matter thereof."

While it is true that counsel did not offer the proposed instruction in compliance with this rule and not until after the judge had started instructing the jury, the recitation by the court of the words "It now becomes my duty—" can hardly be considered a statement of any substantial instruction. It was no more than an introduction. While it does appear from the language of section 1093.5 of the Penal Code that the trial judge was technically correct in refusing the requested instruction because of untimeliness, the time of the refusal by the court, the explanation by counsel as to the reason for his not offering his instruction earlier, the availability of Instruction No. 51 in Los Angeles County in CALJIC, all leads us to believe that refusal of the trial judge to give the requested instruction was error and an abuse of discretion. At 11:55 a.m. the trial would not have been unduly delayed. The court could have inserted CALJIC Instruction No. 51 in its instruction with no more than a minute's delay. We must determine if the refusal was prejudicial error.

In the case of *Griffin* v. *California*, 380 U.S. 609 [14 L.Ed.2d 106, 85 S.Ct. 1229], the United States Supreme Court held that the California comment rule on the failure of a defendant to testify violated the Fifth Amendment privilege against self-incrimination. The United States Supreme Court expressly reserved the decision in *Griffin* as to whether a defendant, as in *Bruno* v. *United States*, 308 U.S. 287 [84 L.Ed. 257, 60 S.Ct. 198], can require that the jury be instructed that a defendant's silence must be disregarded. In *Bruno,* the United States Supreme Court held that in federal cases the accused is entitled, upon request, to have the jury instructed in substance that his failure to avail himself of the privilege of testifying does not create any presumption against him and must not be permitted to weigh against him. Thus in federal cases the refusal to grant such an instruction is not a technical error to be disregarded upon review or motion for new trial.

In California, an erroneous refusal to give a requested instruction or the giving of an erroneous instruction is not

reversible error unles it results in a miscarriage of justice. (Witkin, Cal. Criminal Procedure (1963) § 491, p. 497.)[1]

As the court said in *People* v. *Bostick*, 62 Cal.2d 820, 823, 824 [44 Cal.Rptr. 649, 402 P.2d 529] : "Such error, unless it resulted in a miscarriage of justice, does not, however, automatically require a reversal if article VI, section 4½, of our Constitution is applicable to it. We are of the opinion that such section is applicable. . . . There is nothing in *Malloy* [378 U.S. 1 (12 L.Ed.2d 653, 84 S.Ct. 1489)] of *Griffin* that suggests that the highest federal court considers every violation of due process to be prejudicial per se. Many prior decisions of the United States Supreme Court indicate that it will not reverse for every acknowledged constitutional error . . ."

"Such error does not, however, require a reversal if we are able to declare that it was harmless beyond a reasonable doubt. (*Chapman* v. *California*, 386 U.S. 18 [17 L.Ed.2d 705, 710-711, 87 S.Ct. 824] ; *People* v. *Talley*, 65 Cal.2d 830, 840 [56 Cal.Rptr. 492, 423 P.2d 564].)" (*People* v. *Fontaine*, 252 Cal.App.2d 73 at p. 75 [60 Cal.Rptr. 325] ; see also *People* v. *Modesto*, 66 Cal.2d 695 [59 Cal.Rptr. 124, 427 P.2d 788] ; *People* v. *Boyden*, 251 Cal.App.2d 798 [60 Cal.Rptr. 271].)

■ Beyond a reasonable doubt, the error complained of arising out of the court's improper failure to give the jury the requested instruction as to the legal effect of defendant's failure to testify was harmless and it did not contribute to the verdict obtained. The error complained of added little to the prosecution's strong case against defendant, which consisted of the following substantial evidence :

At about 3:30 a.m. on July 5, 1966, a hole had been made in a door of a TV store and a hole had been made in the wall between the TV store and the store next door. On arriving at the scene the operator of the TV store observed that at the entrance into the TV store, TV sets and control units were lined up at the back door. On being called to the scene, officers waited to observe further action.

At approximately 4:30 a.m., the officers observed a white station wagon going eastbound with the headlights turned off as the car turned into the alley. The car proceeded into a parking lot, and backed up to the rear of the store. Two males alighted from the vehicle. One man went to the rear door of 2820 South Robertson Boulevard, the Vreeland store, and re-

---

[1]For a general discussion of the court's duty to give instructions see *People* v. *Wade*, 53 Cal.2d 322, 334 [1 Cal.Rptr. 683, 348 P.2d 116].

moved the paper which had been placed in the hole and reached through and opened the door and stepped inside. The driver of the car, appellant, went to the rear of the vehicle, lowered the tailgate and proceeded to put on a pair of gloves.

The officers proceeded in their police vehicle down the alley with their headlights on. As they approached the station wagon, the driver, appellant, went to one side of the vehicle and crouched down. The other male came out of the store and crawled under the vehicle. The officers alighted from the police vehicle. Officer Slagel walked several steps toward the vehicle and told both persons to keep their hands where he could see them and to move away from the vehicle. A TV remote control unit was lying close to the driver's side of the front seat, protruding from under the front seat. Both per-sons were arrested.

### The Absence of Counsel at the Time of Sentencing

In regard to the failure of appellant to have counsel at the time of sentencing, in discussing this issue the Attorney General states: ''It appears that appellant was not repre-sented by counsel at the time of sentencing.'' The Attorney General then states: ''We submit that there is a right to coun-sel at this stage of the trial. *People* v. *Lopez,* 60 Cal.2d 223, 243 [32 Cal.Rptr. 424, 384 P.2d 16]. . . .

''If this court is not convinced that appellant waived his right to counsel at the time of sentencing, the judgment should be set aside and the matter should be remanded to permit appellant to be sentenced with counsel present. *In re Roberts,* 40 Cal.2d 745, 748 [255 P.2d 782].''

There is no indication of a waiver of a right to counsel by appellant. A brief summary of the proceedings in the trial court best illustrates this problem. Following his conviction by the jury on November 15, 1966, defendant was remanded to department 95 for proceedings under section 3051 of the Welfare and Institutions Code (for repeated use of narcotics he was in imminent danger of becoming addicted) and the matter was continued to the trial department on January 6, 1967 if he were not committed. Up to this point in the pro-ceedings defendant had at all times been represented by the Public Defender. On January 6, the defendant having been committed under section 3050 of the Welfare and Institutions Code as a narcotic drug addict, the criminal proceedings were ordered off calendar. The defendant filed a petition for writ of habeas corpus and was returned to the court for sentencing

on May 16, 1967, criminal proceedings having been reinstated. The trial judge asked defendant ''Did you get yourself a lawyer?'' Defendant replied that he thought that his brother was supposed to retain one and that he had written a letter saying that he would show up that morning. After defendant gave the court the name of the lawyer the judge stated:

''THE COURT: Bennie Ervin Smith. We have communicated with the lawyer whose name you gave us this morning, and they have advised us that they have not been retained by anybody in your behalf, so this is the time to proceed.''

Defendant then requested the court if he could obtain the money that was on his person at the time he was arrested. The court replied: ''You will have to get that through the Public Defender's Office.''

The colloquy in the courtroom is as follows:

''THE DEFT: . . . Is it proper for me to ask the Court whether or not they considered my Writ? THE COURT: Anything else you want to tell me about the Writ? THE DEFT: Yes, sir. THE COURT: What is it, that isn't included in your documents? THE DEFT: Well, no, sir, nothing that is not included. THE COURT: Anything else? THE DEFT: No, your Honor. THE COURT: Anything from the People? MR. MINKIN: No, your Honor, we submit it. THE COURT: The petition is denied. Now, the defendant has been rejected by the California Rehabilitation Center and is back here, I take it, for sentence. The defendant is now sentenced to the State Prison for the term prescribed by law, and remanded to the custody of the Adult Authority for execution of the judgment. THE DEFT: May I address the Court? THE COURT: No.''

Further comment concerning the impropriety of this proceeding is unnecessary. The colloquy speaks for itself.

The judgment is reversed for reimposition of sentence.

Roth, P. J., and Herndon, J., concurred.